IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 16-1596

---

RICHARD C. ANGINO and ALICE K. ANGINO, husband and wife
Appellants,

v.

WELLS FARGO BANK, N.A., and WELLS FARGO HOME MORTGAGE
Appellees

---

## BRIEF OF APPELLANTS

---

Appeal from the Order dated February 26, 2016, and
Report and Recommendation dated February 19, 2016,
granting Defendant's Motion to Dismiss as to
Counts I, II, III, IV, VI and VII of Plaintiffs' Complaint
CIVIL ACTION No.: 1:15-CV-00418

---

Richard C. Angino, Esquire
PA I.D. No. 07140
ANGINO LAW FIRM, P.C.
4503 N. Front Street
Harrisburg, PA  17110
(717) 238-6791
Counsel for Appellants

# **TABLE OF CONTENTS**

I.    STATEMENT OF SUBJECT MATTER JURISDICTION
      AND APPELLATE JURISDICTION ................................................................1

II.   STATEMENT OF THE ISSUES PRESENTED .............................................3

III.  STATEMENT OF RELATED CASES AND PROCEEDINGS .....................4

IV.   STATEMENT OF THE CASE ........................................................................5

V.    STANDARD OF REVIEW.............................................................................21

VI.   ARGUMENT....................................................................................................22

      A.    The Magistrate Judge's report and recommendation
            which was adopted by the Trial Judge ignores the
            required Standard of Review and relies upon facts,
            conclusions, and inferences not contained in the
            Complaint. ...........................................................................................22

      B.    Plaintiffs' Complaint states a plausible claim for breach
            of the original 2002 contract (Count I) and breach of
            Wells Fargo's offers of "other options" in the context of
            the Federal Home Affordable Mortgage Program
            (HAMP) and Dodd-Frank (Count II). ....................................................29

      C.    Plaintiffs' Complaint states a plausible UTPCPL claim
            (Count III)..............................................................................................36

      D.    Plaintiffs' claim states a plausible claim for promissory
            estoppel/detrimental reliance (Count IV)...............................................36

      E.    Plaintiffs' Complaint states a plausible claim for fair
            credit reporting action (Count VI).........................................................36

VII.  CONCLUSION................................................................................................37

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (U.S. 2009) ............................................................ 21,30

*Burton v. Nationstar Mortg., LLC,* No. 1:13-CV-00307, 2014 WL 5035163 (E.D. Calif 2014) . 35

*Charest v. Federal Nat. Mortg. Ass'n,* 9 F.Supp. 3d 114 (D.Mass. 2014) .................................. 35

*Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878 (9th Cir. 2013) ................................... 3,4,29,33

*DuMont v. Litton Loan Servicing, LP,* No. 12 Civ. 2677 (ER), 2015 WL 1061138
    (S.D.N.Y. March 11, 2015)........................................................................................... 34

*Gaudin v. Saxon Mortgage Services, Inc.,* No. 11-CV-01663, 2015 WL 7454183
    (N.D. Calif. 2015) ....................................................................................................... 35

*Hersh v. CitiMortgage, Inc.*, No. 2:13-CV-1344, 2013 WL 6858443, at *4; 2013 U.S.
    Dist. LEXIS 180926 (W.D. Pa. 2013) ......................................................................... 33

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. N.J. 1997).................. 21

*Johnson v. Aurora Bank, F.S.B.,* No. 14-CV-05424, 2015 WL 1306466 (N.D. Calif. 2015) ...... 35

*LJL Transportation, Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639 (Pa. 2009)........................... 33

*McHolme/Waynesburg, LLC v. Wal-Mart Real Estate Bus. Trust*, No. 08-961,
    2009 WL 1292808; 2009 U.S. Dist. LEXIS 38934 (W.D. Pa. 2009)........................................ 33

*Nickerson-Reti v. Bank of America, N.A.,* No. 13-12316, 2014 WL 2945198 (D.Mass. 2014) ... 35

*Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503 (E.D. Pa. 2010) at 510 ................... 34

*Vassalotti v. Wells Fargo Bank, N.A.*, 815 F. Supp. 2d 856, 862, fn.12 (E.D. Pa 2011)......... 33,36

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) ...................... 3, 4,29,30,31,33,36

*Wilson v. Bank of America, N.A.*, 48 F. Supp. 3d 787 (E.D. Pa. 2014) .......................... 3, 4, 33,36

*Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224 (1st Cir. 2013)............................. 3, 4,29,33,35,36

**Other Authorities**

12 U.S.C. § 5481...................................................................................................................... 7

15 U.S.C. § 1639(c) ................................................................................................................ 7

28 U.S.C. § 1291..................................................................................................................... 2

28 U.S.C. § 1332 .................................................................................................... 1

28 U.S.C. § 1367 .................................................................................................... 1

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203,
    124 Stat. 1376 (2010) ..................................................................................... 1
    §X ....................................................................................................................... 1
    §129(C)(a)(1) ...................................................................................................... 7
    §129(C)(a)(3) ...................................................................................................... 8
    §1400(b) .............................................................................................................. 7
    §1411(a)(2) ....................................................................................................... 7,8

F.R.C.P. 12(b)(6) ............................................................................................. 3, 21

Fair Credit Reporting Act (FCRA), 15 U.S.C.§1681 .......................................... 28,34

Federal Rule of Civil Procedure 8(a)(2) ............................................................... 21

Home Affordable Modification Program (HAMP) ..................................... 26,27,29,31

Pennsylvania Fair Trade Practices and Consumer Protection Law, 73 Pa. C.S. §201-1 ............. 28

## Treatises

Michael S. Barr, *The Financial Crisis and the Path of Reform*, Winter 2012,
    29 Yale J. on Reg. 91 ......................................................................................... 8

Teri J. Dobbins, *Losing Faith:  Extracting the Implied Covenant of Good Faith from
    (Some) Contracts*, 84 Oregon Law Review 227(2005) ...................................... 33,34

Restatement (Second) of Contracts ........................................................................ 32
    §205, §211, §261, §265, §266, §267, §268, §269, §270 .......................................... 33

*The Dodd-Frank Wall Street Reform and Consumer Protection Act: Ability to repay:
    mortgage lending stgandards after Dodd-Frank*, March 2011,
    15 N.C. Banking Instittute 291. .......................................................................... 8

## I.    STATEMENT OF SUBJECT MATTER JURISDICTION AND APPELLATE JURISDICTION

The District Court has federal jurisdiction under violations of federal statutes and jurisdiction over state law claims as follows:

    a.    Violation of federal statutes reference, including §X of Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010);

    b.    Pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and is between the citizens of different states; and

    c.    Pursuant to 28 U.S.C. § 1367 because said claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

Venue is proper.

On the 26th day of February, 2016, District Judge Christopher C. Conner issued the following Orders:

1. The report (Doc. 30) of Chief Magistrate Judge Carlson is ADOPTED.

2. Defendants' motion (Doc. 6) to dismiss plaintiffs' complaint (Doc. 1) is GRANTED.

3. Plaintiffs' complaint (Doc. 1) is DISMISSED with prejudice in light of plaintiffs' explicit rejection (Doc. 31) of an opportunity to amend.

4. The Clerk of Court is directed to CLOSE this case.

**a0002**, et seq.

1

Plaintiffs filed a timely Notice of Appeal to your Court on March 15, 2016.

**a0001**

Your Honorable Court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1291.

## II.   <u>STATEMENT OF THE ISSUES PRESENTED</u>

1.   Did the Trial Court err in adopting the Report of Chief Magistrate Judge Carlson and dismissing with prejudice Plaintiffs' Complaint without complying with the F.R.C.P. 12(b)(6) standard of review?

2.   Did the Trial Court commit reversible error by failing to follow the non-compelling but persuasive precedent of three Circuit Court cases? *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012); *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224 (1st Cir. 2013); and *Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878 (9th Cir. 2013) and the Eastern District Court case *Wilson v. Bank of America, N.A.*, 48 F. Supp. 3d 787 (E.D. Pa. 2014).

### III.    <u>STATEMENT OF RELATED CASES AND PROCEEDINGS</u>

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012); *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224 (1st Cir. 2013); and *Corvello v. Wells Fargo Bank, N.A.,* 728 F.3d 878 (9th Cir. 2013) and *Wilson v. Bank of America, N.A.*, 48 F. Supp. 3d 787 (E.D. Pa. 2014).

## IV.    STATEMENT OF THE CASE

Plaintiffs Richard C. Angino and Alice K. Angino ("Plaintiffs" or "Anginos") brought a consumer suit against Wells Fargo Bank, N.A., and Wells Fargo Home Mortgage ("Wells Fargo" and/or "Defendants") averring violations of federal statutes and common law in the context of 2008-2010 HAMP, Dodd-Frank, UTPCPL and the Fair Credit Reporting Act, etc.

Plaintiffs' Complaint averred that the Anginos are consumer homeowners who on April 5, 2002 had a mortgage of $708,001.15 with First Union National Bank, which eventually became Wells Fargo Bank on their 7,600 sq. ft. home and 60 acres. (¶8) a0058.  As a result of First Union's (now Wells Fargo) Jeffrey R. Troutman, Plaintiffs' private banker and principal of Private Capital Management's recommendation, Plaintiffs agreed to a "once in a lifetime" refinance of their $708,001.15 mortgage with a mortgage equal to the appraised value of their 50 acres and 7,600 sq. ft. home of $2,310,000 with "interest only" for ten years (¶9-12). After deducting Wells Fargo's substantial fees (¶¶13, 14) a0059, Plaintiffs invested the difference in their residential development business.

As a result of Troutman's recommendation, Plaintiffs in 2002 had in excess of $13,000,000 in loans with First Union/Wells Fargo as noted in ¶6, a0057. The consumer home mortgage was tripled in amount at Wells Fargo's suggestion.

Plaintiffs' South Carolina second home loans and all other loans also were incurred for residential development. Richard was almost 62 and Alice 64 at the time.

Virtually all of their savings and investments were in residential development.

The Anginos' home is surrounded by their residential development business and includes gardens on 50 acres. King Drive Corp., their development company presently owns 750 acres and at one time more than 800 acres. Plaintiffs had two major residential developments, Willow Lake and Felicita. Each development loan initially and periodically thereafter, required appraisals.

Lots were sold from the two developments from 2002 until 2007-2008, when the residential development went into a depression.

On May 5, 2010, another bank called the King Drive Corp. residential development loans solely on the basis of "demand," and one and two year maturity dates demanding $6.4 million in 15 days. Plaintiffs at the time were current on all of their loans and had a stellar credit rating. The Anginos Law Firm was highly successful with Richard Angino enjoying $1-2 million income per year.

Plaintiffs averred in their Complaint that Wells Fargo's agent failed to conform with reasonable banking standards in making his recommendation under the circumstances of the case and particularly as averred in Plaintiffs' Complaint in

generating excessive fees (¶¶13, 14) a0059. What occurred between 2002 and May 5, 2010 and with respect to the instant action in 2013 was not as the Magistrate Judge infers the total fault of Plaintiffs in overextending themselves.

15.    Apparently, First Union/Wells Fargo and many of the larger banks from 2002 to 2007 utilized inducements such as the 2002 mortgage marketed to Plaintiffs and other marketing schemes, including derivatives to sell to other individuals home mortgages to make substantial immediate profit without considering intermediate and long-term effects upon their customers, without considering prior real estate market history, and without considering future possible changes in the economy and the changes effect upon the purchasers of the mortgages.

16.    First Union/Wells Fargo and many of the larger banks from 2002 to 2007 were able to not only sell mortgages for substantial fees, but spin them off so as to assume no risk.

17.    Wells Fargo provided the $2,310,000 on Plaintiffs' home knowing at the time that Plaintiffs had in excess of $13,000,000 in loans with Wells Fargo.

18.    Wells Fargo provided the $2,310,000 loan knowing at the time that Plaintiff Richard Angino was 62 years of age and Alice K. Angino was to turn 64 in 2002.

19.    Wells Fargo provided the $2,310,000 without considering what would become Dodd-Frank §1411(a)(2) factors in accordance with regulations prescribed by the Board "rulemaking and enforcement of authority is given to the Bureau of Consumer Financial Protection, Dodd-Frank Act § 1400(b) codified at 12 U.S.C. § 5481, including no creditor may make a residential mortgage loan unless . . . the consumer has a reasonable ability to repay the loan. Section 1411(a)(2), § 129(C)(a)(1). 15 U.S.C. § 1639(c), including seven factors that creditors must consider in determining a consumer's ability to repay a loan. "Credit history, current income, expected income the consumer is reasonably assured of receiving, current

obligations, debt to income ratio where the residual income the consumer will have after paying non-mortgage debt and mortgage-related obligations, employment status and other financial resources other than the consumers equity in the dwelling or real property that secures repayment of the loan. § 1411(a)(2), § 129(C)(a)(3). See note and comment I. The Dodd-Frank Wall Street Reform and Consumer Protection Act: Ability to repay: mortgage lending standards after Dodd-Frank, March 2011, 15 N.C. Banking Institute 291.

20. As a result of Wells Fargo/Wells Fargo Home Mortgage actions and the actions of other large banks in failing to consider the critical seven factors of repayment: past residential housing market history, potential changes in the economy, and the intermediate and long-term effects upon their customers, Wells Fargo/Wells Fargo Home Mortgage and other large banks caused the country to experience the worst recession the country has experienced since the Great Depression from December 2007 to April 2009.

21. Many financial institutions in 2007-2009 were on the verge of bankruptcy resulting in executive and congressional actions culminating with the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, July 21, 2010. See article "The Financial Crisis and the Path of Reform," Winter 2012, 29 Yale J. on Reg. 91.

22. Plaintiffs were significantly affected by the 2007-2009 recession and its effect upon the stock market which resulted in Plaintiffs losing virtually all of their equity in approximately $2,750,000 of margined stocks, with stocks such as Ford Motor Company plummeting from $11.00 per share to less than $2.00 per share in a matter of a few months.

23. Plaintiffs, who were also heavily invested in the residential development market, experienced in 2010 more than $6,400,000 of commercial loans and mortgages with anticipated payments over 8-25 years that were called demanding full payment in 15 days based upon one and two year maturity dates despite regular payments of interest, taxes, insurance, etc. Letters of credit were

called forcing Plaintiffs to self-fund for roads, improvements, and
infrastructure.

24.    Despite the loss of virtually all of their equity with
respect to the $2,750,000 margined stocks and despite the call on their
commercial loans and mortgages, Plaintiffs remained current with
respect to interest, insurance, taxes, etc. with respect to their Wells
Fargo/Wells Fargo Home Mortgage, their $2,310,000 home mortgage
in May 2012.

Plaintiffs/Appellants' Complaint at a0059-a0062.

The 2002 loan required principal payments commencing in May of 2012.

Plaintiffs were able to made regular payments of principal and interest for

approximately a year but eventually were unable to pay the $12,243.94 per month

(¶25) a0062. This was because Plaintiffs' law practice which previously produced

$5-7 million per year and Richard Angino $1-2 million income began to

experience financial difficulties in July/August 2013 because of insufficient cases

for eight attorneys, five lawyers handling medical malpractice and only 47 medical

malpractice cases. (¶27) a0063.

Plaintiffs fell behind in their monthly payments and on August 11, 2013,

Wells Fargo notified Richard C. Angino that his mortgage payments were past due

but "[p]ayment help is available"

**Payment help is available**
We understand you may be experiencing challenges keeping up with
your mortgage payments.  Please call us right away at **1-800-416-
1472** to see if you may be eligible for one of the following programs:

- **Repayment plan** – This program allows your delinquent amount to be added to your regular monthly payment in an attempt to bring your account current.
- **Loan Modification** – This program adds your past due interest, taxes and/or insurance payments to your unpaid principal balance. If you qualify, we may be able to spread out the repayment of any past due amounts over the remaining term of your loan.
- **Partial Claim** – If you are currently able to make your regular monthly payment, this plan may bring your account current by creating a second lien on your property for the past due amount.

(¶28) a0063.

Plaintiffs made a monthly payment on August 28, 2013 and October 30, 2013. a0064, a0157, a0161.

Plaintiff Alice K. Angino sought assistance on 11/29/13 (¶33) The overdue principal and interest charges and unpaid late charges had accumulated to $50,718.48 on 12/01/13. (¶34) a0065, a 0162.

Wells Fargo failed to provide the promised assistance requested by Alice K. Angino on 11/29/13 and despite Plaintiffs making a double payment in February 2014, the amount owed as of 1/01/14 was $63,294.32. (¶35) a0065, a0163.

Wells Fargo began sending dunning past due account notices by mail and phone. (¶36, 37, 38) a0065, a0066, a0164, a0165, a0166.

On January 15, 2014, Plaintiff Richard Angino gave instructions to his HR accounting supervisor and Alice K. Angino assisted in providing all of the

requested Wells Fargo documentation to obtain assistance. (¶44) a0066, a0067, a0170.

Since January 2014, Wells Fargo demanded more and more documents and often time a repeat of documents already supplied.  (¶46-47)  a0067.

Despite receiving thousands of pages of documents, including state and federal income tax returns for Plaintiffs, the Angino & Rovner law firm, King Drive Corporation, Ala Carte, Wells Fargo continued to request additional documents.  (¶¶48, 49) a0067-a0068, a0171, a0173.

On September 15, 2014, Wells Fargo denied Plaintiffs' request for assistance on the basis that Plaintiffs <u>could not afford to live in their home</u>. The costs were too high and Plaintiffs' income too low to stay in their home (¶50) a0068, a0190.

Wells Fargo made its determination relying upon documents submitted in 2013 and 2014 which was one year in the 40 years that Plaintiffs owned their home and after a 40-year history of never missing a payment.

Plaintiff Alice K. Angino asked what options to losing their home were available (¶50).  Plaintiffs were told they had 30 days to appeal and provide additional documentation (¶50) a0068, a0190.

    51.   Plaintiff sent a transmission on September 15, 2014 to Vincent Moynihan with documentation suggesting an expected

11

improvement in income, a reduction of expenses, and a request to have the monthly mortgage principal payments reduced. See Fax Cover Transmission Sheet.

a0068, a0191

Plaintiffs received standardized responses such as acknowledgement of the receipt of documents and were told a decision will be forthcoming, e.g. (¶53, 59, 61) a0069, a0071, a0072, a0193, a0201, a0204.

Starting on October 23, 2014, Wells Fargo refused to accept monthly payments and demanded payment in full of past due principal, interest, late fees, taxes, etc.

Subject: Acknowledging receipt of your documentation supporting your request for mortgage assistance.

56.    On October 29, 2014, Wells Fargo/Wells Fargo Home Mortgage per Vincent Moynihan stated:

Subject: Funds being returned
Wells Fargo Home Mortgage Loan number 0004122181

Dear Richard C Angino & Alice K Angino:

We have recently reviewed your loan and found that there were previously remitted funds that had not been applied. Since those funds are less than the total amount required to bring your loan current, we're unable to apply these funds to your loan. For this reason, we're returning the funds to you.

Your loan is 13 payments past due, with a total amount due of $11,847.26. Please understand that this total may not include additional fees and costs you have recently incurred.

12

Your loan is not currently in, nor being considered for, a Loss Mitigation Plan. Your loan remains in foreclosure status, and Wells Fargo Home Mortgage is continuing to proceed with foreclosure on your home.

We urge you to contact us at 1-866-234-8271 to confirm the amount required to reinstate your loan. If you'd like to request assistance with your payments or have any other questions, please contact me at the phone number listed below.

Sincerely,
Vincent Moynihan
Home Preservation Specialist
Wells Fargo Home Mortgage
Ph: 1-877-311-3581
Ext. 38563
Fax: 1-866-590-8910

Plaintiffs/Appellants' Complaint at a0070-a0071, and Exhibit Z, a0199.

57. Plaintiff Alice Angino received the October 29th letter on November 3, 2014, called on November 4, 2014, the phone rang and then disconnected, asserted Fair Debt Collection Practices Act. Called again and was told that Plaintiffs owed $171,282.93 plus fees and charges and the same had to be paid in full.

a0071, a0199.

58. Plaintiff Alice Angino on October 20, 2014 requested information as to other options and submitted additional documentation.

a0071, a0200

59. On October 28, 2014, Wells Fargo/Wells Fargo Home Mortgage per Vincent Moynihan, stated:

13

Call us immediately so we may respond to your request for mortgage assistance.

Thank you for sending us your documentation supporting your request for mortgage assistance. We're here to help you, but it's critical that we hear from you immediately to determine what options may be available to you.

**Call us – today**

Because you are currently in the foreclosure process, you have limited time to receive assistance before a foreclosure sale is scheduled. That's why you must call us immediately. We'll work with you to help prevent foreclosure if we can. If we don't speak with you and receive all required documents before the scheduled foreclosure sale, we may not be able to stop the sale. Investor and state guidelines may require more time.

\* \* \*

**Don't delay – call us right away**

a0071, a0072, a0201

60. On November 7, 2014, Plaintiff Alice K. Angino completed an application to proceed with the Borrower Counseling Program.

a0072, a0203

61. On 11/04/14, Wells Fargo/Wells Fargo Home Mortgage sent a letter per Vincent Moynihan:

Subject: Your request for assistance

\* \* \*

We're writing about your request for mortgage assistance and the options that may be available to help you. We realize that this process can take some time, and we appreciate your patience while we considered your request.

14

> We have carefully reviewed the information you sent us and determined we have not yet received a complete application. Because you have not provided us with all of the required documentation to complete the application, we are not able to offer you assistance options.

a0072, a0204

62.    On November 12, 2014, Alice K. Angino wrote to Vincent Moynihan emphasizing her attempts to call in response to his most recent letter of November 4th, the frustration in being unable to reach Mr. Moynihan, dispute as to Wells Fargo not receiving a completed application:

> We submitted our original Application for Assistance with substantiations on January 14, 2014, followed by additional information requested by you which was sent on January 16, January 22, February 4, February 28 (an updated application with substantiating documents including IRS returns), March 15, and June 4. We appealed your decision of September 12 by sending additional data on September 15 and filed our Appeal Request Form and exhibits on September 26; same was acknowledged by you on September 29, 2014. On October 3, you sent us a denial of HAMP and enclosed another Appeal Request Form. That was followed by another letter from you dated October 8, suggesting other options. We responded by leaving you a voice mail on October 15, requesting other options and a payment plan. We confirmed that voice mail in our letter of October 20 directed to you at your Des Moines, Iowa, address, requesting a payment plan, expressing our intention to pay the arrearages in full and continue with payments of principal and interest on the loan. Copies of our and our three corporations' 2013 IRS returns, and a Personal and Corporate Financial Statement as of September 30, 2014,

15

were sent along with that letter. That was followed by a letter from you dated October 28, 2014, asking us to call "today" – "immediately." As soon as this letter was received I called two times on November 4, 2014, and once on November 5, leaving messages all three times asking you to call. Simultaneously with that letter we received another letter dated September 29 suggesting options and enclosing an application to participate in your Borrower Counseling Program. We completed and mailed that application on November 7 to the address instructed at Eagan, MN with a copy to you.

Currently, we are working on the Home Affordable Modification Program Packet sent to us under date of October 31, 2014, by your Minneapolis, MN office to submit by the due date of November 15, 2014. Please advise if this Home Affordable Modification Program Packet is the "complete application" referred to in your letter of November 4 or what additional specific information you require.

Please be advised that we do wish to continue our request for assistance and will provide any and all requested documents when you advise us what specifically you want. Thank you.

Very truly yours,

Alice K. Angino          Richard C. Angino

a0072, a0205

63.    Plaintiff Alice Angino sent a letter on November 17, 2014:

Today I received another letter from you dated November 12, 2014, which is an exact duplicate of the letter you sent dated October 28, 2014, and received November 3, asking us to "call immediately" – "today" –

16

"right away." I called two times on November 4, 2014, and again on November 5. See my explanation set forth in my letter of November 12, attached hereto. I have been religiously checking my voice mail messages and there has been no return call from you as promised in your voice message ("will return call within 48 hours").

a0074, a0207

64.    Wells Fargo/Wells Fargo Home Mortgage continued to request and Plaintiffs continued to supply documents as to other options. Application filed 11/14/14. See letter from Karen Lee, Vice President, Wells Fargo Home Lending, 11/17/14. "We expect to complete our research and provide you with the results on or before 12/02/14. In the event additional time is needed, we will contact you." Also see, Home Affordable Modification Program Cover Sheet.

a0074, a0209, a0210

65.    On November 20, 2014, Duane Dobbs identified himself as Wells Fargo's Home Mortgage home preservation specialist. "I'm dedicated to helping you with your request for mortgage assistance. I'll be your single point of contact, and will personally assist you through every step of the process.

a0075, a0211

66.    Plaintiffs promptly responded for and in accordance with the Mortgage Payment Assistance Documentation enclosed pay stubs, tax returns, Homeowner Assistance Form on December 8, 2014. See acknowledgement dated 12/10/14.

I'm writing to let you know we received the documents you sent us to move forward with your request for mortgage assistance. Thank you for providing your information.

**What happens next**

Now that we've received your documents, our home preservation team will carefully review what you've submitted to determine if you're eligible for mortgage assistance. We'll follow up with you again soon to outline next steps in the process and address any additional documents that might be needed to complete our review.

After we ensure that we have all documents we need, we will review and validate those materials to determine if you're eligible for a loan modification. Please note, the information in the documents must be the most recent you have available, and can only be used for 90 days from the date we receive them.

- If you're eligible, you will receive a trial period plan with your new payment amount.
- If you meet all requirements of the trial, you will receive a final loan modification agreement adjusting the terms of your mortgage.
- If you're not eligible for a loan modification program, we'll look at other options to help you avoid foreclosure.

As a reminder, it's important for you to continue making your regular mortgage payments until you hear from us.

a0075, a0076, a0218

67. Dobbs suggested making regular monthly mortgage payments when Wells Fargo had refused to accept monthly mortgage payments or any payment other than full payment.

a0076

Instead of providing help, Defendants reported Plaintiffs to the Credit Rating Bureau, destroyed Plaintiffs' credit rating, and made it impossible for Plaintiffs to refinance or even purchase a car, dishwasher, etc.

Plaintiffs were in a "catch 22." They were offered refinancing by Wells Fargo, denied refinancing based upon not being able to afford to live in their home, offered refinancing upon submission of more documents, and despite numerous submissions never provided any refinance terms but rather told that they have to pay in full all principal, interest, late fees and taxes. Their credit was destroyed even after Plaintiffs' financial position improved, Wells Fargo refused to accept partial payments and demanded payments in full. Attempts to negotiate a payment schedule with defense counsel or Wells Fargo have been unsuccessful.=

The Magistrate Judge ignored the entire Complaint history and relied completely upon one part of ¶54 to find that Wells Fargo denied Plaintiffs' application for assistance because Plaintiffs' home was worth too much to comply with HAMP.

54.    On October 3, 2014, Plaintiffs received from Wells Fargo Home Mortgage notice that Wells Fargo Home Mortgage serviced Plaintiffs' mortgage on behalf of Wells Fargo Bank, N.A. and that the federal government's Home Affordable Modification Program (HAMP) was not applicable because Plaintiffs' loan was higher than the program limit ($729,750 for a one unit property).

a0069, a0194

The Magistrate disregarded the next sentence: "Plaintiffs could submit additional documentation and/or pursue other options." a0069  Plaintiffs submitted additional documentation and pursued other options but Wells Fargo has never responded except to demand payment in full of all past due amounts.

## V.    STANDARD OF REVIEW

The present case is before the Court on a motion to dismiss under F.R.C.P.

12(b)(6).  The standard of review for the present motion is a liberal one.

> A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief. *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir. 1986). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974).

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. N.J. 1997).

The question before the Court is whether there is a <u>plausible chance</u> based <u>on all</u>

<u>well-pleaded facts and reasonable inferences</u> drawn from them that Plaintiffs could

be successful in their claims.

> Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Twombly*, 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," id., at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference  that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (U.S. 2009).  As the Third Circuit has

stated, *Iqbal* does not require pleading of specific facts beyond those necessary to

state a claim.

## VI.     ARGUMENT

**A.     The Magistrate Judge's report and recommendation which was adopted by the Trial Judge ignores the required Standard of Review and relies upon facts, conclusions, and inferences not contained in the Complaint.**

1.     Under I. Statement of Facts of the Case, the Magistrate references other cases "brought by the Plaintiffs against various financial institutions arising out of a common core of operative facts." The Magistrate's conclusion based upon other cases is improper as not included in Plaintiffs' Complaint. Judicial Notice of other cases does not permit the Magistrate's interpretation of the other cases.

2.     The Magistrate states without any basis in the Complaint other than age that Mr. Angino is approaching the conclusion of his professional career. The basis, accuracy of the conclusion, and relevance is questioned. If anything, it supports Plaintiffs' contract claims. In reality, Richard Angino works full time and handles a full complement of cases. He has been and is in a financial position to make monthly payments but has been refused payment of same or refinancing even under Plaintiffs' current financial circumstances.

3.     Contrary to the allegations in the Complaint, the Magistrate Judge places the blame upon the Plaintiffs, rather than Wells Fargo and the banking industry for Plaintiffs' current situation. Note that the three Circuit cases and many

District Court cases are against Wells Fargo which suggests Wells Fargo's policy is to blame the customer for its actions.

The Magistrate disregards the allegation in Plaintiffs' Complaint and the undisputed fact that the banking industry caused the worst recession since the Great Depression and an actual depression in the housing industry. He totally disregards Congressional action taken to prevent the big banks such as Wells Fargo from failing and the Congressional demand that Wells Fargo work with its customers such as the Anginos to refinance their obligations. He disregards the fact that up until certain financial reversals in 2013 and 2014, Richard Angino has been a very successful lawyer and had always paid his bills.

4.    Plaintiffs' financial reversals are fortunately a matter of history and as of late 2015 and 2016, Plaintiffs are in a position and have offered to commence monthly payments. Instead of cooperating as promised with respect to refinancing and accepting partial payments, defense counsel and Wells Fargo have refused partial payments and demanded payment in full of all past loans, interest, late fees, taxes, etc.

5.    The Magistrate states that Plaintiffs' $13 million in loans and mortgage indebtedness includes a mortgage "on a luxurious residential property." *Id.* ¶7.

a0005

23

He fails to consider that Plaintiffs' home is also their business and gardens and the home itself was acquired over four decades at a cost of a <u>fraction of the $2,300,000 mortgage</u>. The original purchase price in 1974 was $135,000. The $2,300,000 appraisal in 2002 included the 50 acres if developed for additional housing.

6.    The Magistrate fails to acknowledge that the Anginos, during the same 4-5 decades, earned $1-2 million per year and that they operated a full-time business of residential development from their home, barn, nursery office, commercial garage, etc. The Magistrate fails to recognize that while the Anginos were earning millions of dollars, they were creating a "green," "sustainable," community and in some years were giving as much as ten percent of <u>gross</u> income to charitable organizations. He implies without basis that the Anginos lived beyond their means.

Plaintiffs for 40 years, up until May 5, 2010, were current and had a stellar credit rating.

The May 5, 2010, Santander call of $6.4 million of residential development loans based upon demand, one and two years maturity dates, although the business loan contemplated a 25 year payoff. The May 5, 2010 "call" following the 2008 stock market collapse and led to the missed Wells Fargo payments.

24

Plaintiffs' long-term plan was to create a trust to perpetuate the magnificent gardens which they had personally and physically created over 50 years and which have been acknowledged as being some of the most beautiful gardens in the world in more than 46 publications.

7.    Most importantly, the Anginos' financial reversal consisted of five things occurring simultaneously during 2008-2013 and resulting from Wells Fargo and the other large banks' actions from 2000-2007. (1) The loss of a $2,600,000 stock "margined" buffer in 2008 because stocks such as Ford Motor plummeted from ten to two in a month; (2) Santander called $6,400,000 of residential development debt on May 5, 2010, even though the debt required only payment of interest plus designated amounts upon the sale of lots and $200,000 per year on the $5,000,000 of debt (25 years); (3) a law office which had five medical malpractice lawyers but only 47 medical malpractice cases in 2014. Malpractice cases were, at the time, difficult to settle and Plaintiff verdicts in central Pennsylvania exceedingly rare; (4) Richard Angino's earnings from the law fell precipitously in 2013 and 2014; and (5) it was impossible to sell lots and land from 2008-2014.

8.    The Magistrate references the economic downturn in 2007-2009 but fails to attribute any of this downturn to the banking industry or Wells Fargo.

Instead, the Magistrate references the Anginos' financial difficulties as self-created from being over extended and getting older.

9.    The Magistrate totally disregards the facts averred in the Complaint and Congressional action as implicating Wells Fargo and the other big banks. Instead, the Magistrate states that Wells Fargo, by refusing to consider refinancing the Anginos' obligations, did not "violate" the terms of the <u>original</u> agreement.

> Instead the Anginos seemed to allege that the bank is liable to them in part because the bank refused to further modify these loans in a fashion that would have been more favorable to those defaulting borrowers. Something the Anginos represent they anticipated would occur in the future. Thus the apparent premise of this Complaint is that Plaintiffs have the right to compel the bank to modify the agreed-upon loan terms to its detriment and to the benefit of these defaulting borrowers. Significantly nothing in the 2002 written loan agreements reflect a promise of commitment by any of the parties to refinance this loan at some time in the future.

a0006

10.    HAMP and Dodd-Frank demanded that banks modify loan terms in the residential housing market. Good faith also required that Wells Fargo consider the country and the Anginos' financial circumstances in 2013 when interest rates were virtually 2%. The Magistrate recognizes that Plaintiffs' action is premised under Wells Fargo's violations under the Home Affordable Modification Program (HAMP) "or any other mortgage relief the bank could offer (*Id.* ¶¶43-78) …

26

At most these communications (*Id.* ¶¶43-78) describe a process – albeit a frustrating process from the Plaintiffs' perspective – by which the Anginos could provide information to the bank so it could determine whether to enter into a modified loan agreement. Ultimately these efforts were entirely unavailing since the Anginos did not qualify for HAMP, a program mortgage relief (*Id.* ¶54)."

a0007

> 54.    On October 3, 2014, Plaintiffs received from Wells Fargo Home Mortgage notice that Wells Fargo Home Mortgage serviced Plaintiffs' mortgage on behalf of Wells Fargo Bank, N.A. and that the federal government's Home Affordable Modification Program (HAMP) was not applicable because Plaintiffs' loan was higher than the program limit ($729,750 for a one unit property). *Plaintiffs could submit additional documentation and/or pursue other options.*

a0069, a0194

The Magistrate disregarded the Complaint averment that the loan was originally called <u>because Wells Fargo concluded that the Anginos could not afford to live in their home</u>, by relying upon financial circumstances for one year rather than 40 years. The Magistrate also disregarded the last sentence of ¶54 and subsequent to October 3, 2014, Wells Fargo promised relief but denied same without referring to the $729,750 amount. Wells Fargo also refused to accept partial payments requested by the Anginos and by its

reporting to the Credit Bureaus the Anginos as "deadbeats" destroyed their stellar credit.

11.   The Magistrate disregarded ¶55, et seq. where and when five days after 10/12/14, Wells Fargo sent a communication suggesting other options.

> 55.   On 10/08/14, Wells Fargo/Wells Fargo Home Mortgage per Vincent Moynihan, stated that Plaintiffs "still do not meet the requirements for a loan modification."
>
> > **Talk to me about your other options**
> > There may be other options available to help you avoid a foreclosure sale, provided you meet the requirements.

a0070,  a0197

12.   Plaintiffs requested that Wells Fargo consider other options. Wells Fargo refused to consider other options and continued to refuse partial payments.

13.   The Complaint was filed on 2/26/2015. The Motion to Dismiss on 3/23/2015, and the Magistrate's Report and Recommendation on 2/19/2016.

14.   The Magistrate categorizes the seven-count civil Complaint under his interpretation of contract law without any consideration of Congressional action under HAMP, the context of Dodd-Frank, and/or alleged violations under the Pennsylvania Fair Trade Practices and Consumer Protection Law. 73 Pa. C.S. §201-1 and the Fair Credit Reporting Act.

**B.   Plaintiffs' Complaint states a plausible claim for breach of the original 2002 contract (Count I) and breach of Wells Fargo's offers of "other options" in the context of the Federal Home Affordable Mortgage Program (HAMP) and Dodd-Frank (Count II).**

The 7th Circuit in *Wigod v. Wells Fargo*, 673 F.3d 547 (7th Cir. 2012 provides the background precedent for Plaintiffs' contractual claims, as well as other claims and causes of actions. *Wigod* was followed by two other Circuit Court actions against Wells Fargo. *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224 (1st Cir. May 21, 2013 and *Corvello v. Wells Fargo Bank*, 728 F.3d 878 (9th Cir. Aug. 8, 2013 and numerous District Courts in Pennsylvania and other states.

The *Wigod* opinion references common contract claims under state law against home mortgage servicers for refusing to modify loans pursuant to the Federal Home Affordable Mortgage Program (HAMP).

> The U.S. Department of the Treasury implemented HAMP to help homeowners avoid foreclosure amidst the sharp decline in the nation's housing market in 2008. … The court reasoned that Wigod's claims were premised on Wells Fargo's obligations under HAMP, which does not confer a private federal right of action on borrowers to enforce its requirements. …   The second set of issues concerns whether these state-law claims are preempted or otherwise barred by federal law. We hold that they are not. HAMP and its enabling statute do not contain a federal right of action, but neither do they preempt otherwise viable state-law claims. We accordingly reverse the judgment of the district court on the contract, promissory estoppel, fraudulent

29

misrepresentation, and ICFA claims, and affirm its judgment on the negligence claims and fraudulent concealment claim.

*Wigod*, 673 F.3d at 554-555.

The *Wigod* Court provides the factual and procedural background for its reversal of

the District Court.

> We review *de novo* the district court's decision to dismiss Wigod's complaint for failure to state a claim. E.g., *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir.2010. We must accept as true all factual allegations in the complaint. E.g., *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007. Under the federal rules' notice pleading standard, a complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A party who appeals from a Rule 12(b)(6) dismissal may elaborate on her allegations so long as the elaborations are consistent with the pleading.

*Wigod*, 673 F.3d at 555.

> In deciding a Rule 12(b)(6) motion, the court may also consider documents attached to the pleading without converting the motion into one for summary judgment. See Fed.R.Civ.P. 10(c). The court may also consider public documents and reports of administrative bodies that are proper subjects for judicial notice, though caution is necessary, of course. [Citing cases.] We have done so here to provide background information on the HAMP program.

A. *The Home Affordable Mortgage Program*

In response to rapidly deteriorating financial market conditions in the late summer and early fall of 2008, Congress enacted the Emergency Economic Stabilization Act, P.L. 110–343, 122 Stat. 3765.Z The centerpiece of the Act was the Troubled Asset Relief Program (TARP), which required the Secretary of the Treasury, among many other duties and powers, to "implement a plan that seeks to maximize assistance for homeowners and ... encourage the servicers of the underlying mortgages ... to take advantage of ... available programs to minimize foreclosures." 12 U.S.C. § 5219(a). Congress also granted the Secretary the authority to "use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures." *Id.*

Pursuant to this authority, in February 2009 the Secretary set aside up to $50 billion of TARP funds to induce lenders to refinance mortgages with more favorable interest rates and thereby allow homeowners to avoid foreclosure. The Secretary negotiated Servicer Participation Agreements (SPAs) with dozens of home loan servicers, including Wells Fargo. Under the terms of the SPAs, servicers agreed to identify homeowners who were in default or would likely soon be in default on their mortgage payments, and to modify the loans of those eligible under the program. In exchange, servicers would receive a $1,000 payment for each permanent modification, along with other incentives. The SPAs stated that servicers "shall perform the loan modification ... described in ... the Program guidelines and procedures issued by the Treasury ... and ... any supplemental documentation, instructions, bulletins, letters, directives, or other communications ... issued by the Treasury."

*Wigod*, 673 F.3d at 556-557.

Although the Anginos' loan was larger than required by HAMP, the request

for refinancing occurred in the context of HAMP, was initially denied based upon

affordability and even after the size of the mortgage was mentioned Wells Fargo continued to suggest other options being available.

Plaintiffs submitted literally thousands of pages of documents over a course of many months without Wells Fargo ever stating why Plaintiffs were not entitled to "other options."

Plaintiffs averred a contractual claim based upon the original 2002 contract as well as Wells Fargo's actions in the context of 2013, 2014 context of HAMP. Restatement (Second) Contracts: reasonable expectations, good faith, and impossibility also applies to determine whether the Angino Complaint avers a plausible contract claim.

Wells Fargo offered help. Plaintiffs' accepted the offer of help when Alice K. Angino sought assistance on 11/19/13 and provided the documents requested at substantial time and expense in January of 2014, and time and again to the time of the filing of the Complaint. Wells Fargo breached its contract or implied contract when they failed to comply with HAMP and their offers to help by demanding and re-demanding the same or similar documents and failing to timely respond to Plaintiffs' request for the assistance promised.

Restatement of Contracts (Second) §205 deals with the duty of good faith and fair dealing "every contract imposes upon each party a duty of good faith and

fair dealing in its performance and its enforcement." Section 211 under Standardized Agreements discusses the premise for reasonable expectations.

Impossibility and impracticability appear in a number of sections including 261, 265, 266, 267, 268, 269, and 270.

*Wilson v. Bank of America, N.A.*, 48 F. Supp. 3d 787 (E.D. Pa. 2014) discusses breach of contract commencing at page 811, *et. seq.  Wigod* discusses breach of contract commencing at 673 F.3d 547, 559 (7th Cir. 2012).   *Young* references breach of contract at 717 F.3d 224, 231 and the breach of the covenant of good faith and fair dealing at 717 F.3d 224, 236.  *Corvello* adopts the reasoning of *Wigod*.  *See also, Hersh v. CitiMortgage, Inc.*, No. 2:13-CV-1344, 2013 WL 6858443, at *4; 2013 U.S. Dist. LEXIS 180926 (W.D. Pa. 2013) at *12-*15; *also see, McHolme/Waynesburg, LLC v. Wal-Mart Real Estate Bus. Trust*, No. 08-961, 2009 WL 1292808; 2009 U.S. Dist. LEXIS 38934 (W.D. Pa. 2009) and *LJL Transportation, Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639 (Pa. 2009).  *Hersh* references *Vassalotti v. Wells Fargo Bank, N.A.*, 815 F. Supp. 2d 856, 862, fn.12 (E.D. Pa 2011).  *See also*, Teri J. Dobbins, *Losing Faith:  Extracting the Implied Covenant of Good Faith from (Some) Contracts*, 84 Oregon Law Review 227(2005).

Dobbins discusses good faith/bad faith in the context of reasonable expectations of the parties at pp. 231-232, stating that good faith is a tool of equity, p. 232, et seq. "Equitable defenses and remedies are intended to 'do justice.'" *Id*. at 233.

The New York District Court references Your Court under Count I – Breach of Contract. *DuMont v. Litton Loan Servicing, LP,* No. 12 Civ. 2677 (ER), 2015 WL 1061138 (S.D.N.Y. March 11, 2015).

> Courts within the Third Circuit have upheld similar breach of contract claims brought under Pennsylvania state law involving TPP agreements associated with HAMP applications.[9] For example, in *Wilson v. Bank of America, N.A.,* the plaintiff accused Bank of America ("BOA") of breaching a TPP agreement similar to the one here. No. 14 Civ. 2498, 2014 WL 4744555, at *2 (E.D.Pa. Sept. 24, 2014). The plaintiff alleged that the agreement provided that if her financial information confirmed her eligibility for HAMP and she made the three trial payments, her mortgage would be permanently modified. *Id.* The plaintiff sent BOA the required documents and mailed the three TPP payments. *Id.* at *3. However, the plaintiff never received the modification agreement promised. *Id.* The court denied BOA's motion to dismiss, noting that "[s]everal courts have found that the TPP does create an enforceable agreement to, at minimum, offer a permanent loan modification, at least for purposes of a surviving a motion to dismiss under Rule 12(b)(6) ." *Id.* (citing *Laughlin v. Bank of Am., N.A.,* No. 13 Civ. 4414, 2014 WL 2602260, at *6 (D.N.J. June 11, 2014).
>
> Similarly, in *Cave v. Saxon Mortgage Services,* a defendant mortgage servicer provided plaintiffs with a HAMP loan modification package, which included a TPP agreement that the plaintiffs accepted and fully performed. No. 11 Civ. 4586, 2012 WL 1957588, at *2 (E.D.Pa. May 30, 2012). Specifically, the TPP agreement contained a "clear

promise" that the defendant would provide the plaintiffs with a permanent loan modification if several conditions precedent were met, including a determination by the lender that the plaintiffs qualified. *Id.* at \*5. The court denied the defendant's motion to dismiss, finding that the complaint stated a breach of the TPP agreement by alleging that the defendant neither offered the plaintiffs a permanent modification nor sent the defendants a timely written denial explaining why they did not qualify. *Id.* at \*7. While the DuMonts, unlike the plaintiffs in *Wilson* and *Cave,* received a modification agreement, their loan was never actually modified and they never received an *executed* version of the agreement necessary to make the permanent modification effective, as allegedly required by the TPP agreement. FAC at ¶¶ 114, 118. Therefore, like the plaintiffs in *Wilson* and *Cave,* the DuMonts' loan was not ultimately permanently modified, as was required by the TPP agreement. *Id.* at ¶ 114.

*DuMont*, 2015 WL 1061138 at \*6-\*7.

*Corvello* was followed by *Burton v. Nationstar Mortg., LLC,* No. 1:13-CV-00307, 2014 WL 5035163 (E.D. Calif 2014); *Gaudin v. Saxon Mortgage Services, Inc.,* No. 11-CV-01663, 2015 WL 7454183 (N.D. Calif. 2015); *Johnson v. Aurora Bank, F.S.B.,* No. 14-CV-05424, 2015 WL 1306466 (N.D. Calif. 2015); *Young v. Wells Fargo Bank, N.A.,* 717 F.3d 224 (2013) was followed by *Nickerson-Reti v. Bank of America, N.A.,* No. 13-12316, 2014 WL 2945198 (D.Mass. 2014); *Charest v. Federal Nat. Mortg. Ass'n,* 9 F.Supp. 3d 114 (D.Mass. 2014).

**C.    Plaintiffs' Complaint states a plausible UTPCPL claim (Count III).**

Plaintiffs again reference the same Circuit cases and *Wilson* that have been referenced under Counts I and II, Argument B.  See particularly, *Wilson v. Bank of America, N.A.*, at 64; *Wigod*, 673 F.3d 547, 565.

**D.    Plaintiffs' claim states a plausible claim for promissory estoppel/detrimental reliance (Count IV).**

Promissory estoppel/detrimental reliance is discussed as an alternative claim in several of Plaintiffs' referenced cases.  Again, see the same cases referenced with regard to Counts I through III, which are not going to be repeated again.

**E.    Plaintiffs' Complaint states a plausible claim for fair credit reporting action (Count VI).**

*See, Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503 (E.D. Pa. 2010) at 510, section B. Count IV-Fair Credit Reporting Act.  *See, Wilson v. Bank of America, N.A.*, 48 F.Supp. 3d 787 (E.D. Pa. 2014).  *Also see, Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 240-241 (1st Cir. 2013).

# VII.    **CONCLUSION**

This may be the first case to reach Your Court dealing with the issues addressed by the three other Circuits and numerous federal districts and state trial and appellate courts. Reversal is required.

Respectfully submitted,

ANGINO LAW FIRM, P.C.

Dated: May 2, 2016

*/s/ Richard C. Angino*
Richard C. Angino, Esquire
PA I.D. #07140
4503 North Front St.
Harrisburg, PA 17110
(717) 238-6791
Attorneys for Appellants

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I, Richard C. Angino, Esquire, hereby certify that I have been admitted before the bar of the United States Court of Appeals for the Third Circuit and that I am a member in good standing of the Court.

*May 2, 2016*                             */s/ Richard C. Angino*
                                        Richard C. Angino, Esquire
                                        Attorney for Appellants

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

I, Richard C. Angino, Esquire, hereby certify that:

1.    This brief complies with type-volume limitation of  Fed. R. App. P.

32(a)(7)(B), because this brief contains exactly **7,821** words, excluding the parts of

the brief exempted by Fed. R. App. P. 32(a)(7)(B)(III).  This number was

determined by using the Microsoft Word selection word count.

2.    This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a monospaced typeface using Microsoft Word 2010,

with size-14, Times New Roman font.

May 2, 2016                                    /S/Richard C. Angino
                                               Richard C. Angino, Esquire
                                               Attorney for Appellants

# **CERTIFICATE OF SERVICE**

I, Richard C. Angino, Esquire, hereby certify that on the **2nd day of May, 2016**, the foregoing Brief of Appellants and Appendices I and II were electronically filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the CM/ECF system with electronic notice upon the following:

> Craig A. Hirneisen, Esq. (cah@stevenslee.com)
> Steven J. Adams, Esq. (sja@stevenslee.com)
> STEVENS & LEE
> 111 North Sixth Street
> Reading, PA  19603-0679

A true and correct copy of the foregoing Brief of Appellants and Appendices I and II were also served upon the aforesaid counsel of record via UPS 2nd Day Air at the aforesaid mailing address.

I also hereby certify that on the **2nd day of May, 2016**, seven (7) copies of the Brief of Appellants and Appendices I and II were sent to the Clerk's Office for the United States Court Of Appeals for The Third Circuit, via UPS 2nd Day Air.

> /S/Richard C. Angino
> Richard C. Angino, Esquire
> Attorney for Appellants

40

## <u>CERTIFICATE OF AUTHENTICITY</u>

Appellants hereby certify that the electronic version of Appellants'

Brief filed via ECF with the Court on May 2, 2016, is identical to the paper copies

forwarded to the Court.

/S/Richard C. Angino
Richard C. Angino, Esquire
Attorney for Appellants

41

## <u>CERTIFICATION OF VIRUS DETECTION SOFTWARE</u>

Appellants hereby certify that the Angino Law Office, P.C. has a

sophisticated layered approach to antivirus protection, including:

1.    all PCs have local AVG that scans files as they are created;

2.    the exchange server has AVG for email; and

3.    Postini scans all outbound email.

This virus detection system was in operation in our offices at the time the

electronic version of Appellants' Brief was created and filed.


/S/Richard C. Angino      
Richard C. Angino
Attorney for Appellants

May 2, 2016

42